**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:    GWENDOLYN L. JACKSON    :    Chapter 13
                                  :
          Debtor                  :    Bky. No. 06-13808ELF

# M E M O R A N D U M

**I.**

On April 10, 2007, two (2) matters were scheduled for a hearing in the above chapter 13 bankruptcy case: (1) confirmation of the chapter 13 plan of the Debtor, Gwendolyn L. Jackson ("the Debtor"); and (2) a motion to dismiss the case filed by the chapter 13 trustee ("the Trustee"). In addition, the court scheduled a third matter for the same date. In an Order dated March 12, 2007, the court alerted all parties in interest that at the April 10, 2007 hearing, the court also would consider dismissing the case pursuant to 11 U.S.C. §1307(c)(1) for unreasonable delay that is prejudicial to creditors. See 11 U.S.C. §1307(c)(1).

At the April 10, 2007 hearing, the case was not ready for confirmation. The Debtor's counsel appeared and represented to the court that substantial new information regarding the Debtor's assets and liabilities recently came to his attention. More specifically, counsel made reference to unscheduled tax claims, as well as a contention by at least one taxing authority that the Debtor had not filed all of her prepetition tax returns. The Debtor's counsel stated that he needed some time to investigate these matters further, after which the Debtor would file an amended chapter 13 plan. He requested that the scheduled matters be continued for a reasonable period of time.

Patricia C. Gray ("Ms. Gray"), acting pro se, appeared at the April 10, 2007 hearing. Ms. Gray has a complicated relationship with the Debtor. She is the Debtor's sister; she is also a creditor holding a disputed claim; and she is a co-owner of the two pieces of real property identified in the Debtor's bankruptcy schedules. Ms. Gray and the Debtor own 2276 North 51st Street, Philadelphia, PA ("N. 51st St.") as tenants in common. Ms. Gray, the Debtor and a third sibling own 5400 Morse Street, Philadelphia, PA ("Morse St.") as tenants in common. Ms. Gray and the Debtor have been embroiled in litigation in state court for many years preceding the commencement of this bankruptcy case.[1] The disputes appear to center on their joint ownership of the real property referenced above and the disposition of their mother's decedent estate.

Not surprisingly, at the April 10, 2007 hearing, Ms. Gray requested that the bankruptcy case be dismissed. She asserted that none of alleged the "new information" was "new" at all. Rather, she suggested that from the outset of the case, Debtor had all of the information necessary to advance this case toward confirmation of her chapter 13 plan and that the Debtor acted purposefully to delay unreasonably the administration of this chapter 13 case.

At the April 10, 2007 hearing, counsel for the Trustee appeared and took no position on the issue whether the case should be dismissed immediately pursuant to §1307(c)(1) for

---

[1] A bankruptcy court may take judicial notice of the matters of record in the state courts within its jurisdiction. E.g., In re Soto, 221 B.R. 343, 347 (Bankr. E.D. Pa. 1998). I have reviewed the state court dockets in a number of lawsuits that Ms. Gray has filed against the Debtor: (1) Gray v. Jackson, No. 2833, August Term 1998 (C.P. Phila.); (2) Gray v. Jackson, No. 1438, March Term 2000 (C.P. Phila.); (3) Gray v. Avery and Jackson, No. 2040, August Term 2006 (C.P. Phila.); and (4) Gray v. Avery and Jackson, No. 3636, May Term 2006 (C.P. Phila.). This list does not include litigation between Ms. Gray and Wynnefield Educational Services, Inc. and Wynnefield Community Resource Centers, Inc., corporations in which the Debtor has an ownership interest. It is also possible that there is other litigation between Ms. Gray and the Debtor of which I am unaware.

unreasonable delay.

For the reasons explained below, I agree, in large part (although not entirely), with Ms. Gray's position. Therefore, I will enter an order dismissing this bankruptcy case.

## II.

### A.

The Debtor commenced this bankruptcy case by filing a bankruptcy petition under chapter 13 of the Bankruptcy Code on September 1, 2006.

In her bankruptcy Schedules,[2] filed on October 3, 2006, the Debtor disclosed, inter alia:

- a tenancy in common ownership interest in N. 51st St., with a fair market value of $200,000;

- a tenancy in common ownership interest in Morse St with a fair market value of $75,000;

- a debt in the amount of $165,000 secured by a mortgage against N. 51st St.;[3]

- "no creditors holding unsecured priority claims to report on . . . Schedule E;"[4]

---

[2] I may take judicial notice of the content of the documents filed in this bankruptcy case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa., Aug. 26, 1998); See also In re Indian Palm Associates, Ltd. 61 F.3d 197, 205 (3d Cir. 1995).

[3] A creditor called "Litton" has filed a proof of claim asserting a secured position against N. 51st St. in the total amount of $176,932.65. The proof of claim alleges that the mortgage is in default as of the monthly instalment falling due on **May 1, 1996** and that the prepetition delinquency is $139,378.93. Thus, the Debtor and the co-owner(s) may have little equity in N. 51st St.

[4] Debtor's Schedule E (Docket Entry No. 19).

- monthly income, after withholding taxes, of $2,852,[5] derived from her salary from a private school (Wynnefield Primary Academy) in which she owns a one-half ownership interest[6] and from rental income;

- monthly expenses of $2,550, without any amounts listed for "rent or home mortgage;"[7]

In her bankruptcy Schedule C, the Debtor also asserted a claim of exemption of her interest in N. 51st St. in the amount of $19,425.00, pursuant to 11 U.S.C. §522(d)(1) and (5). N. 51st St. is a multi-unit building, with four (4) apartments, only one of which is occupied by the Debtor.[8]

On October 3, 2006, the Debtor filed a "100%" chapter 13 plan which provided, <u>inter alia</u> for:

- 36 monthly plan payments of $300.22, for a total of $10,808.18;

- the liquidation of Morse Street and N. 51st Street;

- full payment of claims entitled to priority under 11 U.S.C. §507;[9]

---

[5] Debtor's Schedules I (Docket Entry No. 19).

[6] Debtor's Schedule B (Docket Entry No. 19).

[7] Debtor's Schedule J (Docket Entry No. 19).

[8] At a hearing held on November 30, 2006 in connection with one of the motions filed by Ms. Gray in this case, the Debtor testified that she moved into N. 51st St. several months before she filed this bankruptcy case. The motion will be discussed below and will be identified as "the Second Gray Motion."

[9] The plan references the Pennsylvania Department of Revenue, the City of Philadelphia (for water and sewer charges on N. 51st St) and the City of Philadelphia again for an unexplained claim, each in the amount of $10.00. However, the plan also makes reference to the payment of $4,000 to the Philadelphia Gas Works and $6,000 to the Water Revenue Bureau (presumably, the water revenue bureau of the City of Philadelphia).

- some unclear, indeterminate treatment of allowed unsecured claims;[10]

On September 12, 2006, prior to the filing of the Debtor's bankruptcy schedules and the scheduling of the §341 meeting of creditors, Ms. Gray filed a Motion for Relief from the Automatic Stay ("the First Gray Motion"). The First Gray Motion requested relief to permit Ms. Gray to resume prosecution of two of the lawsuits that she had previously filed against the Debtor. Those lawsuits were pending in the Court of Common Pleas, Philadelphia County ("the CP Actions") when the Debtor commenced this bankruptcy case. In the CP Actions, Ms. Gray appears to be seeking an accounting of the rentals received by the Debtor at N. 51st St., eviction of all of the occupants of N.51st St., possession of N. 51st St. and money judgments against the Debtor and at least one tenant.

An evidentiary hearing on the First Gray Motion was held on October 5, 2006. At that hearing, the Debtor's position was that she intended to implement a chapter 13 plan providing for the sale of her real estate in order to address comprehensively her obligations to Ms. Gray and her other creditors. She contended that Ms. Gray's legitimate claims, if any, could be satisfied in the Debtor's chapter 13 plan. She urged the court to deny the First Gray Motion to give her an opportunity to employ the bankruptcy process to address all of her financial problems in one forum and proceeding. At the conclusion of the October 5, 2006 hearing, I issued an oral bench

---

[10] On its face, the plan is inconsistent in its proposed treatment of allowed unsecured claims. In its title, the plan refers to itself as a "100% plan." In ¶2(c), the plan provides for a pro-rata distribution to unsecured creditors, which implies something less than a 100% distribution. Similarly, in another, unnumbered paragraph, the plan suggests that the distribution for the benefits of unsecured creditors "is $30,000." I do not understand the treatment provided for allowed unsecured claims in the Debtor's chapter 13 plan.

opinion and denied the First Gray Motion.[11]

On October 8, 2006, the Clerk issued a notice scheduling the §341 meeting of creditors for November 29, 2006. The same notice informed interested parties that the confirmation hearing was scheduled for January 9, 2007 and that the deadline for filing proofs of claim was February 27, 2007.

The dockets reflect that the §341 hearing was not held until March 26, 2007, more than six (6) months after the case was filed. Cf. 11 U.S.C. §341(a) (§341 hearing is to be held "no fewer than 20 and no more than 50 days after the order for relief"). Initially, the §341 hearing was scheduled for November 29, 2006. On that date, it was continued to December 20, 2006. The docket contains no notation as to what occurred on December 20, 2006, but it is undisputed that the §341 hearing also was not held on that date. The next docket entry on the subject is dated March 1, 2007 and it states that the §341 hearing was continued and rescheduled to March 26, 2007.[12] At the court hearing on April 10, 2007, the Debtor and the Trustee reported that the §341 hearing was finally held on March 26, 2007.

Meanwhile, on January 4, 2007, Litton Loan Servicing, LLP ("Litton") filed a motion seeking relief from the automatic stay with respect to N. 51st St. ("the Litton §362 Motion"). In the Litton §362 Motion, Litton alleged that the Debtor had not paid four (4) postpetition monthly instalments of $950.29. Since the case was filed in September 2006, the first postpetition monthly instalment fell due in October 2006. Thus, Litton alleged that the Debtor had not paid

---

[11] A written Order denying the First Gray Motion was docketed on October 19, 2006.

[12] The court's Order dated March 12, 2007, putting dismissal for "unreasonable delay" at issue, was prompted, in part, by the fact that more than six (6) months had passed in the case without a §341 hearing having been conducted.

any postpetition monthly mortgage payments.  The Debtor filed an answer to the Litton §362 Motion denying the material factual allegations.  However, the Debtor later withdrew the answer.  See Docket Entry No. 63.  Litton was granted relief from the automatic stay by Order dated February 9, 2007.

One other proceeding in the case merits mention.  On November 2, 2006, after denial of the First Gray Motion, Ms. Gray filed what she styled as another motion for relief from the automatic stay ("the Second Gray Motion").  A hearing on the Second Gray Motion was held on November 30, 2006.  At the hearing, Ms. Gray sought to distinguish the Second Gray Motion from the First Gray Motion.  She explained that she previously sought relief from the automatic stay to enforce her right to collect rents from tenants at N. 51st St.  In the second motion, she stated that she wished to pursue her rights in state court to collect rent from the Debtor herself, based on the ownership status of Ms. Gray and the Debtor as "co-tenants."  In a later submission to the court, Ms. Gray requested that the court order the Debtor to pay her $850/month for "rental compensation."  See Docket Entry No. 62.

At the conclusion of the evidentiary hearing on the Second Gray Motion, the court took the matter under advisement.  The Debtor, through her counsel, requested the opportunity to file a brief in response to memorandum filed by Ms. Gray nine (9) days prior to the hearing.  Due to the holiday season, the Debtor's counsel requested thirty (30) days to prepare and file a memorandum in opposition to the Second Gray Motion.  I granted the Debtor's request with the condition that there would be no extensions of time.  Also, I set January 10, 2007 as the deadline for Ms. Gray to file a reply memorandum.  See Docket Entry No. 50.  After requesting, the opportunity to brief the issues, the Debtor failed to file a memorandum in support of her position.

On January 22, 2007, I entered an order prohibiting the Debtor from filing a memorandum of law in opposition to the Second Gray Motion and granted Ms. Gray until February 9, 2007 to file a further memorandum in support of her position. Ms. Gray made a further submission through a letter addressed to the court. See Docket Entry No. 62. The matter remains under advisement.

**B.**

This is not the Debtor's first bankruptcy filing. Therefore, to place the Debtor's conduct in this case in its proper perspective, it is useful to review briefly the proceedings in the prior case.

The Debtor's prior chapter 13 bankruptcy case was filed on January 9, 2003 and docketed at Bky. No. 03-10496 ("the Prior Bankruptcy Case"). In the Prior Bankruptcy Case, the Debtor disclosed the existence of numerous disputed debts on her Amended Schedule E (filed on May 27, 2003) in an aggregate amount in excess of $250,000, including debts to:

- the U.S. Internal Revenue Service;
- the U.S. Department of Education;
- the Pennsylvania Department of Revenue; and
- the City of Philadelphia.

These debts were all omitted in the Schedule E filed in the Debtor's present bankruptcy case.

In the Prior Bankruptcy Case, motions to dismiss the case were filed by Ms. Gray (on April 3, 2003) and the Chapter 13 Trustee (on July 15, 2003). After many continuances of the hearings on those motions, the court held a hearing and granted the Trustee's dismissal motion on December 9, 2003. The Debtor's chapter 13 plan had not been confirmed prior to dismissal

of the case.

### III.

### A.

In this case, the Debtor purportedly sought relief under the Bankruptcy Code, in large part, to resolve her bitter, intractable legal disputes with her sister, Ms. Gray. By filing her bankruptcy case, she invoked the automatic stay provision against Ms. Gray, as well as a number of other creditors. The other creditors included governmental entities with substantial tax and other claims against her.

In seeking bankruptcy relief under chapter 13 of the Bankruptcy Code, the Debtor undertook the obligation to take reasonable, appropriate steps to move the case along the path toward confirmation of a chapter 13 plan. Particularly because this was not her first bankruptcy case, the standard for evaluating the reasonableness of her efforts is necessarily more stringent than if this case were her first bankruptcy filing. See generally In re Yeager, 2004 WL 422049, *3 (Bankr. E.D. Pa. February 18, 2004) (court may hold a chapter 13 plan filed after the failure of prior bankruptcy cases to higher standard of feasibility in making decision whether to confirm the plan). Further, the Debtor was well aware that the denial of the First Gray Motion was based, in part, on the expectation that she would employ diligently the chapter 13 procedural devices that are available to resolve (or at least "tee up") the issues that must be addressed at a chapter 13 confirmation hearing.

I find that the Debtor was unreasonably lax in her prosecution of this bankruptcy case and this shortcoming merits dismissal of the case pursuant to 11 U.S.C. §1307(c)(1).

**B.**

Section 1307(c) of the Bankruptcy Code provides:

> Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including--
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors . . . .

Notwithstanding the statutory text stating that a case may be dismissed "on request of a party in interest or the United States trustee," many courts have held that a bankruptcy may dismiss a case sua sponte pursuant to §1307(c). E.g., Jablonski v. Internal Revenue Service, 204 B.R. 456, 458-59 (W.D. Pa. 1996), aff'd, 114 F.3d 11721 (3d Cir. 1997); In re Fricker, 116 B.R. 431, 442 (Bankr. E.D. Pa. 1990); 4 Collier on Bankruptcy ¶1307.04, at 1301-11 (15th rev. ed. 2006) ("Collier") (observing that a 1986 amendment to §105(a) of the Code presumably provides authority for sua sponte dismissal). But cf. 4 Keith M. Lundin, Chapter 13 Bankruptcy §337.1, at 337-2 (3d ed. 2000 & Supp. 2004) (acknowledging the existence of the court's power to dismiss without a creditor request but criticizing the frequency of its use). When the court's sua sponte power under §1307 is exercised, the court must ensure that parties in interest have notice and an opportunity for a hearing. See 4 Collier, ¶1307.04, at 1307-11.

In this case, the court provided the Debtor and all parties in interest with almost one month's advance written notice of the potential for dismissal of the case. The court's March 12, 2007 Order expressly advised the Debtor that one ground for the potential dismissal of the case on April 10, 2007 was "unreasonable delay" under §1307(c)(1). Thus, I am satisfied that there has been compliance with the "notice and a hearing" procedural requirements of §1307(c).

Therefore, I turn to the merits of the issue.

### C.

The general principles that guide whether this case should be dismissed for "unreasonable delay" were articulated by Chief Judge Sigmund in In re Wile, 310 B.R. 514, 517 (Bankr. E.D. Pa. 2004 ):

> In enacting the Bankruptcy Code, Congress carefully balanced the rights of debtors and creditors. For example, while the automatic stay enjoins creditor action against the debtor and her property, it provides the creditor with adequate protection of its interest in the debtor's property so that its position does not deteriorate while it is statutorily enjoined. Moreover, it is generally accepted that the debtor's burden to demonstrate that a reorganization is in process increases with the passage of time. Finally, because creditors' rights are constrained during the pendency of Chapter 13 proceedings, the Bankruptcy Code contemplates that a plan will be promptly confirmed so that payments to creditors may commence.

Id. at 517 (citation and footnoted omitted).

Based on the history of this case, I conclude that the Debtor's prosecution of this case was inadequate, justifying dismissal of the case.

Initially, the Debtor filed bankruptcy schedules that were inexcusably incomplete. I cannot fathom how the Debtor filed schedules omitting creditors holding substantial claims against her – the same creditors listed in her prior bankruptcy case dismissed less than two (2) years earlier. The Debtor has not explained the reason for the omissions. There is no contention that she paid the debts during the time period between the two (2) bankruptcy cases. Since the debts apparently remained unpaid in the relatively brief period between her bankruptcy cases, it is not plausible that the Debtor was unaware of their existence, particularly given the substantial

dollar amount involved (claims in excess of $250,000). I also observe that the same attorney represented the Debtor in both bankruptcy cases and in all of the state court litigation cited in note 2, supra.[13] The Debtor finally acknowledged the existence of the unscheduled claims only after the long delayed §341 hearing was held, more than six (6) months into the case. And only then did she request additional time to investigate further the nature and amount of the claims.[14]

The Debtor's need for additional time and the attendant delay in the administration of this case is attributable to the Debtor's own shortcomings, primarily her inadequate bankruptcy schedules (left uncorrected for six (6) months) for which no reasonable excuse was offered. While I am not presently prepared to draw the inference suggested by Ms. Gray – that the errors indicate a conscious, bad faith effort to mislead creditors and the court[15] – the lack of care

---

[13] The state court dockets reflect that the Debtor's bankruptcy attorney has been representing the Debtor in the contentious state court litigation on a continuous basis for a number of years, perhaps as far back as 1998. Therefore, it is likely that the attorney would have been aware of any dramatic change in the Debtor's financial situation that might have occurred after the dismissal of the Prior Bankruptcy Case. Given her long-term relationship with her bankruptcy counsel, the Debtor was in a better position than many other bankruptcy debtors (who frequently form their attorney-client relationships with their bankruptcy counsel only shortly before the commencement of the bankruptcy case) to fulfill the disclosure obligations placed on a chapter 13 debtor by the rules of court. See, e.g., Fed. R. Bankr. P. 1007.

[14] The deadline for filing proofs of claim expired on February 27, 2007. See Docket Entry No. 29. The deadline for claims of governmental units was February 28, 2007. See 11 U.S.C. §502(b)(8); Fed. R. Bankr. P. 3002(c)(1). It does not appear that the Debtor has considered the issue whether presently unfiled claims of the omitted creditors (even if filed after the deadline) can be allowed and receive a distribution under her chapter 13 plan. Compare Fed. R. Bankr. P. 3002(c) (setting deadlines for the filing of proofs of claim in chapter 13 cases) with Fed. R. Bankr. P. 9006(b)(3) (restricting the court's authority to enlarge the time for taking action under Rule 3002(c)).

[15] It is possible to infer a dilatory intent from certain, other actions of the Debtor in this case. The Debtor requested an opportunity to file a memorandum of law in opposition to the Second Gray Motion, but never did. The Debtor initially contested the Litton §362 Motion and withdrew her answer to that motion. However, I find it unnecessary to make a finding regarding

exhibited suggests that the Debtor and her counsel failed to appreciate adequately the Debtor's responsibilities in the bankruptcy process. The absence of a reasonable explanation for the filing of incomplete bankruptcy schedules contributes to my finding that the Debtor's delay in this case is not reasonable.

The Debtor's lack of attention in this case was not limited to the integrity of her bankruptcy schedules. Another obstacle to confirmation, which would create a further delay in the case, came to light at the April 10, 2007 hearing. The Debtor appears to be responsible for this problem as well. The Debtor's counsel reported that certain taxing authorities contend that the Debtor has not filed all of her prepetition tax returns. Counsel described the problem as if it had recently come to his attention. It is troubling that the Debtor and her counsel appear to be in the early stages of investigating this issue when more than seven (7) months have passed since her case was filed. The Bankruptcy Code expressly requires that chapter 13 debtors demonstrate at an early stage of the case that all prepetition tax returns have been filed. See 11 U.S.C. §1308; see also 11 U.S.C. §1325(a)(9). The Debtor has failed to explain why she did not address this issue earlier.

Further, as discussed above, the Debtor's chapter 13 plan is not a model of clarity and it does not even address the claims of the Debtor's most aggressive protagonist, Ms. Gray. The Debtor made no effort to amend the plan to clarify its terms generally or to set forth the treatment of Ms. Gray's claims.

Even assuming that the Debtor's chapter 13 plan is drafted adequately, there is nothing in the record suggesting that the Debtor has taken one concrete step to implement the key provision

---

the Debtor's subjective intent in connection with my decision to dismiss this bankruptcy case.

of the plan: the sale of the Debtor's real estate. It appears that the Debtor has not retained a real estate broker or taken any other steps to market the properties for sale. The Debtor's inaction is particularly surprising in light of the entry of an order granting relief from the automatic stay to Litton, the mortgagee of one of the properties.

Finally, at the April 10, 2007 hearing, the Debtor's counsel reported that the Debtor underwent treatment for cancer. Presumably, counsel intended to suggest that the Debtor's health problem provides an adequate explanation for the delays in this case. The Debtor was not present to testify concerning the history of her health problems at the hearing, however. Her counsel also did not explain the reason for the Debtor' absence and presented no further details concerning her illness. While the Debtor's illness is a relevant factor in evaluating whether the delays in this case were reasonable, I am unconvinced that this unfortunate fact, standing alone, provides a reasonable justification for the lack of movement toward confirmation in this case.[16]

In short, after reviewing the history of this case, I am forced to conclude that the Debtor has not taken reasonable steps to advance the case to a confirmation hearing. I recognize that from the perspective of the Debtor and her counsel, this is a relatively difficult chapter 13 case. The Debtor has a litigious adversary who is intent on impeding the Debtor's bankruptcy rehabilitation. This is the Debtor's second bankruptcy case, which creates what might be

---

[16] The Debtor testified at length at the hearing on the Second Gray Motion on November 30, 2006, almost three (3) months into the case. I do not recall any testimony at that time regarding her health. Perhaps she was diagnosed after the November 30, 2006 hearing. In any event, I do not know when the Debtor was first diagnosed or the time frame of her treatments. Nor do I know the extent to which the illness or the treatments disabled the Debtor or impeded her ability to assist her counsel in taking necessary action to prosecute this case. The simple fact, by itself, that the Debtor, unfortunately, has experienced significant health problems, is not a sufficient explanation for the delays in this case.

considered less margin for error. The Debtor has a variety of tax and other government claims that must be addressed, some of which may be secured and some of which may be entitled to priority status. I am cognizant that the Debtor's financial problems are not susceptible to the type of "form" chapter 13 plan that may be used effectively in the volume chapter 13 practice of many attorneys who regularly represent chapter 13 debtors in this district. Rather, in this case, the Debtor requires a "custom" chapter 13 plan, involving both periodic payments to the chapter 13 trustee and a partial liquidation of her assets. The case may also require some litigation to establish the proper amount and classification of certain creditor claims.

      The problems and complexities of this case provide all the more reason why the Debtor and her counsel were obliged to be proactive in utilizing the reorganization tools made available by chapter 13. Instead, they have done no more than the bare minimum, merely reacting when necessary to motions filed by the other parties in interest. Perhaps the bottom line is that this case is seven (7) months old and it is no closer to confirmation than when it was filed. Indeed, as of the April 10, 2007 hearing, the Debtor's counsel appeared unable to identify, with a reasonable degree of accuracy, the universe of debts to be provided for in the Debtor's chapter 13 plan. In light of the considerable history behind the debt problems experienced by the Debtor and the amount of time she spent trying to resolve them even before filing the present case, the lack of progress in the case is unreasonable and unacceptable.[17]

---

[17] Section 1307(c)(1) provides for dismissal due to unreasonable delay "that is prejudicial to creditors." I confess that I am unsure what the concept of "prejudicial to creditors" adds to unreasonable delay requirement in §1307(c). For secured creditors, prejudice from delay can be prevented, ordinarily, by granting the secured creditor relief from the automatic stay pursuant to 11 U.S.C. §362(d) to enforce its property rights. Such relief may make dismissal of the entire case unnecessary. This suggests that §1307(c)(1) may be intended to protect the rights of unsecured creditors. However, I also find it difficult to conceptualize precisely how unsecured

**IV.**

For the reasons set forth above, I will enter an order dismissing this chapter 13 bankruptcy case pursuant to 11 U.S.C. §1307(c)(1).

Date: __April 18, 2007__     _____
ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

creditors who hold claims that may be discharged in a chapter 13 case are prejudiced by delay in a chapter 13 case. Any prejudice arising from ongoing delay in a bankruptcy case results from the automatic stay, which prevents unsecured creditors from exercising their rights under applicable nonbankruptcy law. If a plan is eventually confirmed and fully performed, the unsecured claims are discharged anyway. If a plan is ultimately confirmed and performed and an unsecured debt is discharged, how is an unsecured creditor prejudiced by unreasonable delay during the pre-confirmation administration of the case? Perhaps the concept of prejudicial delay in §1307(c)(1) is intended to address cases in which the debtor has unreasonably delayed the administration of the case and the debtor's prospects for confirming and fully performing a chapter 13 plan are questionable. If so, I am satisfied that this is such a case.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:    **GWENDOLYN L. JACKSON** | : | Chapter 13 |
| | : | |
| Debtor | : | Bky. No. 06-13808ELF |

# O R D ER

**AND NOW,** for the reasons set forth in the accompanying Memorandum, it is hereby

**ORDERED** that the above-captioned bankruptcy case is **DISMISSED** pursuant to 11 U.S.C.

§1307(c)(1).

Date:   April 18, 2007

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

cc:    Patricia C. Gray
       P.O. Box 15526
       Philadelphia, PA 19131